## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY M. SCHOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **02:11-cv-397** |
| **vs.** | ) | |
| | ) | |
| **NORTH BRADDOCK BOROUGH;** | ) | |
| **NORTH BRADDOCK BOROUGH** | ) | |
| **POLICE DEPARTMENT; BOARD OF** | ) | |
| **SUPERVISORS OF NORTH BRADDOCK** | ) | |
| **BOROUGH; DEAN BAZZONE, individually** | ) | |
| **and as Chief of Police of North Braddock** | ) | |
| **Borough; and MAX WITTLINGER,** | ) | |
| **Individually and/or as Police Officer of North** | ) | |
| **Braddock Borough,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

July 12, 2011

### I.      Introduction

Pending before the Court are DEFENDANTS' PARTIAL MOTION TO DISMISS

COMPLAINT PURSUANT TO RULE 12(b)(6) (Document No. 6) with brief in support

(Document No. 7), and Plaintiff's MEMORANDUM IN OPPOSITION TO DEFENDANTS'

PARTIAL MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6) (Document

No. 10).  Accordingly, the motion is now fully briefed and ripe for disposition.

### II.     Background

As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff,

the non-moving party.  The following background is drawn from the Complaint and the factual

allegations therein are accepted as true for the purpose of this Opinion.

The instant case arises from an event which occurred on or about October 14, 2010, in a residential area near 833 Locust Street, North Braddock Borough, Pennsylvania, 15124. (Compl. at ¶ 9). Sadie, a six (6) year old brown pit bull dog and family pet with no history of biting or attacking, was owned by Plaintiff, Kelly M. Schor. (Compl. at ¶ 10). At approximately 2:00 or 2:15 p.m., Sadie got out of Plaintiff's home and jumped the fence surrounding Plaintiff's yard. (Compl. at ¶¶ 10-11). After running down the street, Sadie encountered a male in his thirties who was walking down the sidewalk listening to his headphones. (Compl. at ¶ 12). Sadie circled the man, never barking or growling. (Compl. at ¶ 12). Sadie subsequently ran into a wooded area in the direction of Locust Street. (Compl. at ¶ 12-13). Upon reaching Locust Street, Sadie ran towards a dead end where a group of tree cutters were working. (Compl. at ¶ 15.). One of the tree cutters stopped working to pet Sadie. (Compl. at ¶ 15).

Upon realizing that Sadie had escaped, Plaintiff and her sister pursued Sadie onto Locust Street. (Compl. at ¶ 14). At about that same time, Defendant, Officer Max Wittlinger of the North Braddock Borough Police Department, who was completing his 7:00 a.m. to 3:00 p.m. shift, received a dispatch regarding a loose brown pit bull. (Compl. at ¶ 16). Officer Wittlinger was the first to arrive at 833 Locust Street, and was soon joined by Patrolman Joseph Brown. (Compl. at ¶ 17). At this time, Sadie reappeared on Locust Street with Plaintiff and her sister running towards her. (Compl. at ¶ 18).

Plaintiff's sister yelled "that's our dog," to Officer Wittlinger two or three times, with no response from Officer Wittlinger. (Compl. at ¶ 19). Officer Wittlinger subsequently pulled out his gun. (Compl. at ¶ 19). Patrolman Brown was a short distance behind Officer Wittlinger, and Plaintiff and her sister were approaching Sadie from Officer Wittlinger's left. (Compl. at ¶ 19). Sadie displayed no signs of aggression. (Compl. at ¶ 20). She did not growl, bark, or snarl, and

at no time during the encounter did Sadie attack Officer Wittlinger. (Compl. at ¶ 20, 23). However, Officer Wittlinger discharged four rounds into Sadie, killing her while Plaintiff and her sister were ten (10) to fifteen (15) feet away from Sadie, attempting to retrieve her. (Compl. at ¶ 24).

After Sadie was killed, one of the tree cutters that Sadie had approached earlier yelled to Officer Wittlinger, "why did you shoot [Sadie]?" (Compl. at ¶ 27). Patrolman Brown responded, telling the tree cutter that if he did not disburse, he would be cited for inciting a riot. (Compl. at ¶ 27).

The Complaint reflects that Officer Wittlinger had previous encounters with dogs similar to the instant incident. Specifically, six months prior to the instant event, Officer Wittlinger shot another pit bull (Compl. at ¶ 28), putting the Borough on notice in regard to Officer Wittlinger's violent propensities toward dogs. (Compl. at ¶ 29). However, Officer Wittlinger was never disciplined in any way for this prior shooting. (Compl. at ¶ 30). Plaintiff also contends that Officer Wittlinger unreasonably delayed the preparation of the police report of the incident (Compl. at ¶ 31), which alleged a number of false statements such as Officer Wittlinger had yelled out a number of times prior to his shooting of Sadie and that she had acted aggressively towards him. (Compl. at ¶ 32).

Plaintiff originally filed her twelve count complaint in the Court of Common Pleas of Allegheny County on February 22, 2011, with four counts alleging claims under federal law against all Defendants. The remaining eight counts allege claims under various theories of Pennsylvania statutory and common law, three of which are alleged solely against Defendant Officer Wittlinger, with the others being alleged against all of the Defendants collectively. On March 25, 2011, Defendants removed the action to this Court. *See* Doc. No. 1.

### III.    Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the complaint.  The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (207) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.  However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court must separate the factual and legal elements of the claim.  *Id.*  Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions."  *Id*. at 210-211.  Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Id*. at 211 (citing *Iqbal* 129 S. Ct. at 1949).  The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id*. at 211

(quoting *Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231(citing *Twombly*, 550 U.S. at 553).

## IV.    Legal Analysis

Defendants' partial motion to dismiss presents a number of challenges to the counts raised in Plaintiff's complaint; challenges that range from contending that certain Defendants should be dismissed outright to challenges reducing the capacity in which certain counts are brought. *See* Doc. Nos. 6 & 7. More specifically, Defendants contend that the counts raised

within the complaint fail as a matter of law, to the extent that Plaintiff alleges: (1) claims against the Borough (2) claims against the Borough Police Department (Defs'. Mot. at ¶ 6); (3) official capacity claims against the Board of Supervisors, Chief of Police Bazzone, and Officer Wittlinger (Defs'. Mot. at ¶ 5); (4) individual capacity claims against Chief Bazzone (Defs'. Mot. at ¶ 6); (5) substantive due process claims (Defs'. Mot. at ¶ 3); (6) procedural due process claims (Defs'. Mot. at ¶ 3); (7) excessive force claims (Defs'. Mot. at ¶ 4); (8) punitive damages claims (Defs'. Mot. at ¶ 7); and (9) all state negligence claims (Defs'. Mot. at ¶ 7). The Court will address each of these claims *seriatim*.

A.  Counts III – VI:  Federal Claims Against All Defendants

The Court begins the analysis with the claims brought under federal law.  At counts III, IV, V, and VI, Plaintiff brings section 1983 claims, each of which are alleged against all Defendants.  Generally, 42 U.S.C. § 1983 does not create substantive rights, but rather provides a remedy for a violation of rights created by federal law or the Constitution of the United States. 42 U.S.C. § 1983; *City of Okl. City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).  42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

To establish a Section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of a right] was committed by a person acting under the color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

The four federal claims allege the same factual predicate for relief, namely the "injuring, destroying and killing of Plaintiff's dog 'Sadie'" (Compl. at ¶ 53), and differ only to the extent that each alleges a different legal basis for recovery. Count III is averred to be a general violation of "rights secured by the Constitution and laws of the United States, including Due Process and 42 U.S.C. § 1983." (Compl. at ¶ 49). In comparison, Count IV alleges that the same acts by Defendants constitute a violation of Plaintiff's rights as protected under the substantive due process clause of the Fourteenth Amendment; Count V alleges a procedural due process claim; and Count VI alleges violations of rights secured by the Fourth Amendment.

In all counts, however, a distinction exists between the acts complained of involving Defendant Officer Wittlinger and those of the remaining Defendants. In each, the acts of Officer Wittlinger occurred on the day and at the time of the shooting incident itself. The remaining Defendants (North Braddock Borough, Borough Police Department, Board of Supervisors, and Chief Bazzone)(the "Borough Defendants"), on the other hand, were not present at the time or location, and are collectively included within each count for alleged pre-incident acts or omissions; including the alleged existence of a "customary policy … without any informed training or guiding policies and procedures" that caused the death of the animal (Compl. at ¶ 47), as well as allegations of general failure to instruct, train, supervise, control and discipline, Officer Wittlinger and the other police officers in such matters (Compl. at ¶ 55).

1. <u>Counts III – VI:  Federal Claims Against Defendant Police Department</u>

Defendant Police Department seeks to be dismissed from the complaint on the basis that it has no corporate identity and that it is not a "person" subject to civil rights statutes. (Defs'. Br. in Support at 14). It is well settled that a municipal police department is not a proper party in a

suit in which the municipality itself is a party. The North Braddock Borough "Police Department is a sub-unit of the [borough] government and, as such, is merely a vehicle through which the city fulfills its policing functions." *Johnson v. City of Erie*, 834 F. Supp. 873, 878-879 (W.D. Pa. 1993). Furthermore, "courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not." *Johnson*, 834 F. Supp. at 879 (citing *PBA Local No. 38 v. Woodbridge Police Dep't.*, No. 89-2214, 1993 U.S. Dist. LEXIS 12965, at *14 (D.N.J. Sept. 9, 1993)); *See Martin v. Red Lion Police Dept.*, 146 Fed. Appx. 558, 562 (3d Cir. 2005); *Uhl v. County of Allegheny*, No. 06-01058, 2008 U.S. Dist. LEXIS 55587 (W.D. Pa. July 22, 2008). Accordingly all federal claims brought by Plaintiff against the North Braddock Borough Police Department will be DISMISSED with prejudice insofar as it is not a proper party under the law.

    2. <u>Counts III – V: Official Capacity Claims Against Defendants Board of Supervisors, Chief Bazzone, and Officer Wittlinger</u>

Defendants contend that all claims brought against Defendant Board of Supervisors and the individual Defendants in their official capacities should be dismissed. *See* Doc. No. 7 at § IV. In response, Plaintiff argues that the Board of Supervisors, Chief Bazzone in his official capacity, and Officer Wittlinger in his official capacity should be liable in the instant case if "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (Plaintiff's Br. in Opp'n at 10). Plaintiff concedes however that the claims against these Defendants are redundant with respect to the claims against the Borough itself. Plaintiff nevertheless argues that dismissal of these Defendants is not mandatory or necessary. Rather, doing so it is at the discretion of the Court. (Plaintiff's Br. in Opp'n at 10) (citing *Burton v. City of Phila.*, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000); *Satterfield v. Borough of Schuylkill Haven*,

12 F. Supp. 2d 423, 432 (E.D. Pa. 1998)).  Defendants argue, on the other hand, that the official

capacity claims set forth in Plaintiff's Complaint *should* be dismissed because "any such claims

are redundant of the claims against the Borough." (Defs'. Br. in Support at 15).  The Court

agrees.

The United States Supreme Court has stated that "[t]here is no longer a need to bring

official-capacity actions against local government officials, for under *Monell [v. Dept. of Social*

*Services*, 436 U.S. 658 (1978)] . . . local government units can be sued directly for damages and

injunctive declaratory relief." *Kentucky. v. Graham*, 473 U.S. 159, 167 (1985) (citing *Memphis*

*Police Dept. v. Garner*, 471 U.S. 1 (1985)).  Although the Court recognizes that dismissal of

these claims is discretionary, the Court is persuaded by decisions of the United States Supreme

Court, as well as decisions from the United States District Court for the Western

District of Pennsylvania, and our sister court, the United States District Court for the Eastern

District of Pennsylvania, all of which have dismissed such claims. *See e.g. Will v. Michigan*

*Dept. of State Police*, 491 U.S. 58, 66 (1989) ("[A] suit against a state official in his or her

official capacity is not a suit against the official but rather is a suit against the official's office.

As such, it is no different from a suit against the State itself."); *Copenhaver v. Borough of*

*Bernville*, No. 02-8398, 2003 U.S. Dist. LEXIS 1315, at *18 (E.D. Pa. Jan. 9, 2003) (dismissing

claims against council as redundant when borough is a party); *Kenny v. Witpain Township*, No.

96-3527, 1996 U.S. Dist. LEXIS 11421, at *9 (E.D. Pa. Aug. 6, 1996) (dismissing claims against

police officers acting in their official capacities as redundant when township is a party); *Verde v.*

*City of Phila.*, 862 F. Supp. 1329, 1336-1337 (E.D. Pa. 1994) (dismissing claims against

individuals acting in their official capacity); *Johnson*, 834 F. Supp. at 878-879 (dismissing police

department as an unnecessary and redundant party).

Plaintiff brought this lawsuit against North Braddock Borough (Compl. at ¶ 2), and any claims against these Defendants are not being challenged at this time. Plaintiff has also brought suit against the Board of Supervisors (Compl. at ¶ 3), and Chief Bazzone (Compl. at ¶ 6), and Officer Wittlinger in their official capacities (Compl. at ¶ 7). In light of the extensive case law and the claims against the Borough itself, the Court finds and rules that any claims against the Board of Supervisors, and Chief Bazzone and Officer Wittlinger in their official capacities, are redundant and unnecessary. *See Verde*, 862 F. Supp. at 1336-1337. Indeed, if the official capacity claims were not dismissed, "the Court would be inviting the very confusion that the Supreme Court sought to eliminate in *Monell*." *Kenny*, 1996 U.S. Dist. LEXIS 11421, at *7.

Accordingly, all federal claims brought by Plaintiff against the Board of Supervisors and Chief Bazzone and Officer Wittlinger in their official capacities will be DISMISSED with prejudice because any amendment to the Complaint would be futile.[1]

### 3. Federal Individual Capacity Claims Against Chief Bazzone

Defendant Bazzone argues that all claims alleged against him in his individual capacity should be dismissed because Plaintiff has failed to allege that he had any personal involvement with the shooting of Plaintiff's dog. (Defs'. Br. in Support at 12). Plaintiff persuasively responds that Chief Bazzone, in his individual capacity, is a proper defendant in this case for two reasons. First, Chief Bazzone was "deliberate[ly] indifferent [by failing] to specifically train an employee in a manner that would have prevented Plaintiff's injury." (Plaintiff's Br. in Opp'n at 7) (citing *Reitz v. Co. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). Second, Plaintiff argues that Chief Bazzone "had consciously acquiesced to a careless and reckless policy of allowing the

---

[1] The dismissal of the official capacity claims against the Board of Supervisors, Chief Bazzone, and Officer Wittlinger will in no way diminish Plaintiff's rights as she still has all claims pled against North Braddock Borough.

employees of North Braddock Borough Police Department to confront canines, without any informed training, in such a way as to cause the destruction of citizen's [sic] canine pets without justification." (Plaintiff's Br. in Opp'n at 7) (citing Compl. at ¶ 37).

A government official may face a suit in his or her individual capacity for actions taken under color of state law. *Kentucky*, 473 U.S. at 165. These suits can be brought on the basis of either failure to train or under the theory of that a custom or policy causes a deprivation of a constitutional right. *Marshall v. Ambridge*, 798 F. Supp. 1187, 1198 (W.D. Pa. 1992).

The United States Court of Appeals for the Third Circuit has held that an "official's failure to train, supervise, and discipline subordinates could not, absent a showing of the official's direct involvement in the subordinates' unconstitutional actions, amount to the breach of a clearly established constitutional duty." *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990) (citing *Chinchello v. Fenton*, 805 F.2d 126, 134 (3d Cir. 1986)); *accord McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009) (stating "to be liable . . . a supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged."); *Gilles v. Davis*, 427 F.3d 197, 207 n. 7 (3d Cir. 2005) (stating "[a] supervising authority may be liable under § 1983 for failing to train police officers when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact."). Plaintiff alleges that Officer Wittlinger has a history of shooting dogs, including an incident six months prior to the instant event (Compl. at ¶ 28); the prior incident put the Borough on notice of Officer Wittlinger's propensity for shooting dogs (Compl. at ¶ 29); Officer Wittlinger received no disciplinary actions for his prior dog shootings (Compl. at ¶ 30); Chief Bazzone was on duty when Officer Wittlinger was dispatched to Locust Street after the report of a dog roaming the streets (Compl. at ¶ 16); and it was Chief

Bazzone's responsibility to train, instruct, discipline, and control the Officers of the North Braddock Borough Police Department. (Compl. at ¶¶ 5-6, 55). Thus, the Court finds that Plaintiff has sufficiently stated a claim against Chief Bazzone in his individual capacity because Chief Bazzone may have had actual knowledge and acquiescence in Officer Wittlinger's alleged unconstitutional actions.[2]

With regard to the custom or policy issue, the United States Court of Appeals for the Third Circuit has held that "a police official may be held liable in an individual capacity when the police official, acting with deliberate indifference, establishes or maintains a policy or custom that directly causes a deprivation of constitutional rights." *Brown*, 922 F.2d at 1120, n. 16. In viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has pled sufficient facts to show that Chief Bazzone may have acted with deliberate indifference by not disciplining Officer Wittlinger after his prior dog shooting and allowing Officer Wittlinger to be dispatched to handle a similar situation, thus maintaining a custom and/or policy within the Police Department that it was proper to shoot a pet dog wandering the streets without its owner. (Compl. at ¶ 47).

Defendants also argue that Chief Bazzone is entitled to a qualified immunity defense and that qualified immunity should be resolved at the earliest possible stage of litigation. (Defs'. Br. in Support at 13) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). However, "[a]t the 12(b)(6) stage, qualified immunity will be found 'only when the immunity is established on the face of the complaint.'" *Cunningham v. N. Versailles Twp.*, No. 09-1314, 2010 U.S. Dist. LEXIS 7005, at *36 (W.D. Pa. Jan 27, 2010) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)). In other words, if on the face of the complaint, Plaintiff "fails to state a claim of

_____

[2] Plaintiff's claim for failure to train may not be sufficient to ultimately survive; however, at this stage the Complaint pleads sufficient facts to state a plausible claim and survives the Motion to Dismiss. *See Iqbal*, 129 S. Ct. 1937.

a violation of a clearly established law, 'a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Cunningham*, 2010 U.S. Dist. LEXIS 7005, at *36 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In this case, the Court finds that Plaintiff has sufficiently stated a claim of a violation of a clearly established constitutional right against Chief Bazzone and his subordinate pursuant to § 1983. Thus, Chief Bazzone does not satisfy the requirements for a qualified immunity defense at this early stage of the litigation. Thus, Defendants' Motion to Dismiss Chief Bazzone in his individual capacity will be DENIED.


### 4. Federal Claim for Substantive Due Process Violation

In opposition to the Motion to Dismiss her claim alleged under the Substantive Due Process Clause of the Fourteenth Amendment, Plaintiff essentially recasts her right to be free from an unlawful seizure under the Fourth Amendment as a basis for relief under the Substantive Due Process Clause of the Fourteenth Amendment. (Plaintiff's Br. in Opp'n at 4-5). More particularly, she cites to *Brown v. Muhlenberg Township*, 269 F.3d 205, 209 (3d Cir. 2001), for the proposition that "personal property, such as owning a dog, are considered 'effect' for purposes of the Fourth Amendment" and that killing a pet dog "constitutes a seizure under the Fourth Amendment." (Plaintiff's Br. in Opp'n at 4). Defendants contend that Plaintiff failed to state a claim because "ownership of a pet dog [does not] constitut[e] a fundamental right such that [the] Fourteenth Amendment substantive due process protection would or could possibly apply." (Defs'. Br. in Support at 6).

The Court agrees with Plaintiff that a pet dog constitutes personal property and is protected by the Fourth Amendment, but reaches a different conclusion when applying her

rationale to a substantive due process claim. "The Supreme Court has held that when a plaintiff makes a claim that law enforcement have used excessive force in the course of a seizure of a person, such a claim is analyzed under the **Fourth Amendment**, and **not** under a substantive due process claim." *Coperhaver*, 2003 U.S. Dist. LEXIS 1315, at *14 (emphasis added) (citing *Graham v. Conner*, 490 U.S. 386, 395 (1989)). Known as the "more specific provision rule . . . if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 834-44 (1998).

As Plaintiff correctly contends, the United States Court of Appeals for the Third Circuit has stated that the killing of a pet constitutes a seizure under the Fourth Amendment. *See Brown*, 269 F.3d at 209. Thus, as this "seizure" is covered by the specific constitutional provision of the Fourth Amendment, the "more specific provision rule" provides that Plaintiff's substantive due process claim is more appropriate to be evaluated through the lens of the Fourth Amendment.[3] *See* U.S. Const. amend. IV. Therefore, the Court finds that Plaintiff's assertion of excessive force in the course of the seizure of her property, Sadie, by Officer Wittlinger, is properly evaluated under her Fourth Amendment Claims and not substantive due process. Accordingly, Count IV of the complaint will be DISMISSED with prejudice because any amendment to the Complaint would be futile.

### 5. Federal Claim for Procedural Due Process Violation

Plaintiff argues that Defendants violated her right to procedural due process as

---

[3] "At least one court has held that a plaintiff cannot maintain a substantive due process claim arising out of destruction of their dog while also pursuing an unreasonable seizure claim under the Fourth Amendment." *Copenhaver,* 2003 U.S. Dist. LEXIS 1315, at *16 (citing *Van Patten v. Bighamton*, 137 F. Supp. 2d 98, 107 (N.D.N.Y. 2001).

guaranteed by the Fourteenth Amendment. (Compl. at Count V). Plaintiff contends that she was afforded no due process before Officer Wittlinger shot and killed her pet pit bull Sadie. She further contends that Officer Wittlinger had pre-deprivation remedies available, such as mace and a nightstick, which he could have utilized to subdue Sadie, as opposed to killing her. (Compl. at ¶¶ 70-71). Defendants move to dismiss Plaintiff's claim by utilizing the rationale of the United States Court of Appeals for the Third Circuit in *Brown*, 269 F.3d 205. Although it has been stated that "[a]t the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard," *Coperhaver*, 2003 U.S. Dist. LEXIS 1315, at *12 (quoting *Abbot v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)), Defendants argue that Plaintiff's post-deprivation remedies of state claims, such as conversion, are sufficient to satisfy Plaintiff's procedural due process rights. (Defs'. Br. in Support at 9).

In *Brown*, a police officer shot and killed a family pet dog after the dog had escaped from the owner's yard. The Court in *Brown* stated that although a pre-deprivation process is required for an individual's procedural due process rights to be upheld, when the conduct is "'random and unauthorized' (so that state authorities cannot predict when such unsanctioned deprivations will occur)" any pre-deprivation process is practically impossible. *Brown*, 269 F.3d at 213 (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). In such a case, a "post[-]deprivation process is all that is due." *Brown*, 269 F.3d at 213.

The Court notes that, Plaintiff failed to address the specific issue of her state conversion claim as a post-deprivation due process remedy. In fact, Plaintiff failed to address any of the issues raised by Defendants in regard to Claim V. The United States Court of Appeals for the Third Circuit has stated that "[28 U.S.C. § 2071. Fed. R. Civ. P. 83] provides, in part, that 'upon

failure of respondent to file a response and brief in opposition to the motion, the court may treat the motion as conceded and render whatever relief is asked for in the motion.'" *Anchorage Assocs. v. V.I Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Thus, by failing to address the issue of post-deprivation remedies raised by Defendants, the Court finds that Plaintiff has conceded the issue and Defendant's Motion to Dismiss Count V will be GRANTED with prejudice.[4]

### 6. Federal Claim for Excessive Force

The Complaint states that Defendants used excessive force while seizing her property, specifically her pet dog Sadie. (Compl. at ¶¶ 55, 60, 62-63, 71-72, 77, 81-82). Defendants argue that Plaintiff's claim of excessive force fails because "a dog is not a 'citizen of the United States' or a 'person' with rights, privileges and immunities secured by the Constitution." (Defs'. Brief in Support at 10) (citing 42 U.S.C. § 1983). The Court does not find Defendants' argument to be persuasive.

The Fourth Amendment to the Constitution of the United States provides that "the right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." U.S. Const. amend. IV. Furthermore, the Supreme Court of the United States has found that "effects" include one's personal property, such as a pet dog. *Brown*, 269 F.3d at 209 (citing *United States v. Place*, 462 U.S. 696, 701 (1983)). It follows that Plaintiff's possessory interest in Sadie was protected by the Fourth Amendment. Thus, the facts pled by Plaintiff are sufficient to state a claim for a violation of her Fourth Amendment right, and Defendants' Motion to Dismiss Count VI will be DENIED.

---

[4] Plaintiff's state tort claims for conversion at Count II will suffice as post-deprivation due process as stated in *Brown*, 269 F.3d at 213.

7. <u>Punitive Damage Claims</u>

It is well established that a municipality, such as North Braddock Borough, may not be held liable for punitive damages. *See City of Newport v. Facts Concerts Inc.*, 453 U.S. 247 (1981). Thus, the punitive damages claim brought by Plaintiff against North Braddock Borough will be DISMISSED with prejudice.

However, "an individual defendant may be held liable in his individual capacity for punitive damages if the actions are motivated by 'evil motive or intent, or when it involves reckless or callous indifference to the federal protected rights of others.'" *Copenhaver*, 2003 U.S. Dist. LEXIS 1315, at *27 (quoting *Smith v. Wade*, 462 U.S. 30, 56 (1983)).[5] Therefore, Plaintiff's punitive damage claims against Chief Bazzone and Officer Wittlinger, in their individual capacities, may proceed. *See City of Newport*, 453 U.S. at 266-67; *Carroll v. Bristol Township*, 827 F. Supp. 332, 335 (E.D. Pa. 1993).


B. <u>Plaintiff's State Law Claims</u>

1. <u>State Law Claims of Negligence Against Defendants</u>

In her Complaint, Plaintiff brought four (4) claims of negligence: (1) negligent infliction of emotional distress against all Defendants; (2) negligence against Officer Wittlinger; (3) negligence against all other Defendants; and (4) negligence per se against all defendants. Defendants argue that all of the state law claims of negligence against Defendants should be dismissed pursuant to the Pennsylvania Subdivision Tort Claims Act ("PSTCA"). (Def. Br. in Support at 17); *See* 42 PA. C.S. § 8541. Plaintiff argues that the instant case falls within one of

---

[5] Plaintiff's Complaint states that "Defendants['] actions have been intentional, outrageous, willful, wanton and/or in reckless disregard for Plaintiff's rights and Plaintiff therefore seeks recovery of punitive damages." (Compl. at ¶ 39).

the eight (8) enumerated exceptions[6] to the PSTCA. *See* 42 Pa. C.S. § 8542. Specifically, Plaintiff argues that § 8542(a)(2) applies to this case because a dog is considered personal property. *See* 3 Pa. C.S. 459-601; *Brown*, 269 F.3d at 209; (Defs'. Br. in Support at 17).

Under the PSTCA, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. Furthermore, North Braddock Borough itself qualifies as a local agency as it is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania. *See Copenhaver*, 2003 U.S. Dist. LEXIS 1315; *DiJoseph v. Phila.*, 947 F. Supp. 834, 843 (E.D. Pa. 1996) (stating both city and police officers qualify for immunity under the PSTCA when no exception applies). Although in Pennsylvania a dog is considered personal property, Plaintiff has not established that the local agency (North Braddock Borough), or Officer Wittlinger as an arm of that local agency, ever had control or possession[7] of Sadie, as required by the exception to PSTCA. *See* § 8542(a)(2). *See e.g. Allegrino v. Conway E & S, Inc.*, No. 09-1507, 2010 U.S. Dist. LEXIS 82393 at *17 (E.D. Pa. Aug. 12, 2010) (stating "'[p]ossession' for purposes of the real property exception means 'total control over premises' for more than a limited amount of time."). In fact, Plaintiff's Complaint pleads that Officer Wittlinger was no closer than ten (10) feet from Sadie during the entirety of their encounter. (Compl. at ¶ 21). Thus, with no exception applicable, all parties to this suit have immunity from Plaintiff's state negligence claims under PSTCA. *See Coperhaven*, 2003 U.S. Dist. LEXIS 1315 at * 27 (stating where the exceptions do not apply, recovery on a negligence theory is barred.).

---

[6] "Subsection (b) lists eight limited acts or circumstances which may form the basis of a cause of action against a local agency. Generally, these include (1) liability arising from operation of a motor vehicle; (2) care, custody or control of personal property of others in the possession or control of the local agency; (3) care, custody or control of real property in the possession of the local agency; (4) a dangerous condition of trees, traffic signs, lights or other traffic controls; (5) a dangerous condition of utility services; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) care, custody, or control of animals in the possession or control of a local agency." *Copenhaver*, 2003 U.S. Dist. LEXIS 1315 at *24-25 (citing 42 Pa. C.S. § 8542(b)).
[7] Because of lack of control or possession of Sadie, Plaintiff also could not utilize exception (8). *See* § 8542(b)(8).

Therefore, Defendant's Motion to Dismiss Plaintiff's state negligence claims (Counts VIII through XI) will be GRANTED with prejudice because state negligence claims are barred by the PSTCA.

**V.      Conclusion**

In summary, Defendants' Partial Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) will be GRANTED in part and DENIED in part. Plaintiff will not be granted the right to file an amended complaint as it would be futile under the circumstances of this matter.

An appropriate Order follows.

McVerry, J.

| | | |
|---|---|---|
| KELLY M. SCHOR, | ) | |
|       Plaintiff, | ) | |
| | ) | 02:11-cv-397 |
|   vs. | ) | |
| | ) | |
| NORTH BRADDOCK BOROUGH; | ) | |
| NORTH BRADDOCK BOROUGH | ) | |
| POLICE DEPARTMENT; BOARD OF | ) | |
| SUPERVISORS OF NORTH BRADDOCK | ) | |
| BOROUGH; DEAN BAZZONE, individually | ) | |
| and as Chief of Police of North Braddock | ) | |
| Borough; and MAX WITTLINGER, | ) | |
| Individually and/or as Police Officer of North | ) | |
| Braddock Borough, | ) | |
|       Defendants. | | |

## ORDER OF THE COURT

AND NOW, this 12th day of July, 2011, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** as follows:

(1)     The Motion to Dismiss all claims, Counts III-VIII and X-XII, brought against the North Braddock Borough Police Department is **GRANTED** and said claims are dismissed with prejudice;

(2)     The Motion to Dismiss all claims brought against the Board of Supervisors of North Braddock Borough, at Counts III-VIII and X-XII, is **GRANTED** and said claims are dismissed with prejudice;

(3)     The Motion to Dismiss all claims brought against Police Chief Dean Bazzone, at Counts III-VIII and X-XII, and Officer Max Wittlinger, at Counts I-IX and XI-XII, in their respective official capacities, is **GRANTED** and said claims are dismissed with prejudice;

(4)     The Motion to Dismiss all claims, Counts III-VIII and X-XII, brought against Police Chief Dean Bazzone in his individual capacity is **DENIED**;

(5)     The Motion to Dismiss Count IV (substantive due process rights) of the Complaint is **GRANTED** and said claim is dismissed with prejudice;

(6)     The Motion to Dismiss Count V (procedural due process rights) of the Complaint is **GRANTED** and said claim is dismissed with prejudice;

(7)     The Motion to Dismiss Count VI (Fourth Amendment Rights) is **DENIED**;

(8)     The Motion to Dismiss Counts VIII-XI (state negligence claims) is **GRANTED** and said claims are dismissed with prejudice; and

(9)     The Motion to Dismiss Count XII (punitive damages) is **GRANTED** as to all claims remaining against North Braddock Borough.

The caption of this case is amended as follows:

| | | |
|---|---|---|
| **KELLY M. SCHOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **02: 11-cv-397** |
| | ) | |
| **NORTH BRADDOCK BOROUGH;** | ) | |
| **DEAN BAZZONE, individually;** | ) | |
| **and MAX WITTLINGER, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

It is further ORDERED that Defendants shall file an Answer to the remaining claims set forth in the Complaint on or before July 26, 2011.

BY THE COURT:

/s/ Terrence F. McVerry
United States District Court Judge

cc:     **Dennis M. Moskal**
        Law Offices of Dennis M. Moskal, LLC
        Email: dennis@elliot-davis.com

        **Teresa O. Sirianni**
        Marshall, Dennehey, Warner, Coleman & Goggin
        Email: tosirianni@mdwcg.com

        **Paul D. Krepps**
        Marshall, Dennehey, Warner, Coleman & Goggin
        pdkrepps@mdwcg.com